UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MARK CARAWAY,

                Petitioner,

v.

MIKE MILLER,

                Respondent.

**MEMORANDUM & ORDER**
22-CV-2912 (HG)

**HECTOR GONZALEZ**, United States District Judge:

      Petitioner Mark Caraway, currently incarcerated at Green Haven Correctional Facility, petitions this Court *pro se* for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254.  ECF No. 4. Following a jury trial, Petitioner was convicted of attempted aggravated murder of a police officer, aggravated assault of a police officer and three counts of attempted aggravated assault of a police officer in Suffolk County Supreme Court ("County Court").  *Id.* at 1–2.  On June 6, 2018, Petitioner was sentenced to a term of imprisonment of 50 years to life.  *Id.* at 1.  On appeal to the New York Supreme Court, Appellate Division ("Appellate Division"), Petitioner's conviction was affirmed.  *Id.* at 2.  Thereafter, Petitioner's request for leave to appeal to the New York Court of Appeals was denied.  *Id.*

      Petitioner challenges the sufficiency and the weight of the evidence supporting his conviction and asserts that the County Court violated his constitutional due process rights by failing properly to assess whether:  (i) the prosecution sufficiently proved intent beyond a reasonable doubt, and (ii) Petitioner met his burden of proving the affirmative defense of mental disease.  *Id.* at 2, 4.  Respondent, Mike Miller, Superintendent of the Green Haven Correctional Facility, opposes the petition.  For the reasons set forth below, the petition is denied.

**BACKGROUND**

On August 13, 2016, Petitioner's parents called the police to report that Petitioner had locked himself in the basement of a friend's house, was armed with knives, and refused to come out. ECF No. 10 at 2. Police officers responded to the scene. *Id.* After unsuccessful attempts to initiate contact with Petitioner, the police officers decided to enter the basement. *Id.* at 5–6. Petitioner allegedly charged at, fought with, and stabbed one of the police officers in the face multiple times. *Id.* at 7–11.

On May 2, 2018, Petitioner was convicted after an eight-day jury trial of attempted aggravated murder of a police officer, aggravated assault of a police officer and three counts of attempted aggravated assault of a police officer. ECF No. 11-11 at 200–02 (Trial Transcript). On June 6, 2018, Petitioner was sentenced to: (i) 40 years to life imprisonment for attempted aggravated murder; (ii) 30 years imprisonment followed by five years of post-release supervision for aggravated assault; and (iii) 10 years imprisonment followed by five years of post-release supervision on each of the three counts of attempted aggravated assaults. ECF No. 10 at 1–2 (Respondent Summary of Facts). The 10-year sentences for the attempted aggravated assaults were imposed to run concurrently to each other and consecutively to the 40-year sentence for attempted aggravated murder. However, the 30-year aggravated assault sentence was imposed to run concurrently to the 40-year attempted aggravated murder sentence. As a result, Petitioner received a combined sentence of 50 years to life imprisonment. *Id.* at 2.

Petitioner subsequently filed a notice of appeal from the judgment of conviction contending that: (i) it was error for the County Court not to grant Petitioner's "motion to dismiss" following the close of the prosecution's case because the prosecution failed to establish Petitioner's intent at trial and "the conviction was against the weight of the evidence," and (ii)

testimony at trial that Petitioner "did not know his actions were wrong [was] against the weight of the evidence." ECF No. 11 at 44–51 (Brief for Appellant). On November 25, 2020, the Appellate Division affirmed the conviction, holding, among other things, that: (i) viewing the evidence in the light most favorable to the prosecution, "it was legally sufficient to establish, beyond a reasonable doubt, the defendant's guilt," and (ii) having conducted its own independent review of the weight of the evidence, it was "satisfied that the verdict of guilt was not against the weight of the evidence." ECF No. 11 at 5–6 (Decision and Order); *see also People v. Caraway*, 132 N.Y.S.3d 840 (N.Y. App. Div. 2020). Petitioner subsequently sought leave to appeal, but on March 11, 2021, the New York Court of Appeals denied the application. *See People v. Caraway*, 167 N.E.3d 1284 (N.Y. 2021).

On April 25, 2022, Petitioner timely filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1] Respondent submitted an opposition on August 25, 2022, ECF No. 10-1, and on November 15, 2022, Petitioner filed a reply. ECF No. 13.

## **LEGAL STANDARD**

*A.    Deferential Standard of Review*

Federal courts apply the standard of review set forth in 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), to determine whether a petitioner in state custody is entitled to a writ of habeas corpus. It provides in relevant part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any

---

[1]    This Court will consider the date Petitioner mailed his Petition as the filing date. *See Noble v. Kelly*, 246 F.3d 93, 97 (2d Cir. 2001) ("This prison mailbox rule is justified by the litigant's dependence on prison mail system and lack of counsel to assure timely filing with the court."); ECF No. 1 at 7.

3

> claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" clearly established federal law only if "the state court reached a conclusion of law that directly contradicts a holding of the Supreme Court" or, "when presented with facts that are materially indistinguishable from a relevant Supreme Court precedent," the state court arrived at a different result. *Evans v. Fischer*, 712 F.3d 125, 132 (2d Cir. 2013).[2] The writ may also be granted if a state court decision is an "unreasonable application" of clearly established federal law, meaning "the state court identifies the correct governing legal principle from [Supreme Court] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 413 (2000).

Apart from a state court's adjudication of a claim that was an unreasonable or contrary application of federal law, a district court may grant a writ of habeas corpus when the state court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The state court's determination of the facts is presumed to be correct, however, and the petitioner bears the burden of "rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "[A] state-court factual determination is not unreasonable merely because the

---

[2] Unless noted, case law quotations in this order accept all alterations and omit all internal quotation marks, citations, and footnotes.

federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010).

   B.  *Exhaustion Requirement and Procedural Default*

A district court shall only review a writ of habeas corpus if "the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). The Second Circuit has adopted a "two-stage inquiry for determining whether the requisite exhaustion has occurred." *Klein v. Harris*, 667 F.2d 274, 282 (2d Cir. 1981).

First, the petitioner must have fairly presented his "federal constitutional claim to an appropriate state court." *Id*. "A federal habeas petitioner may fairly present to the state courts the constitutional nature of his claim, even without citing chapter and verse of the Constitution by stating his constitutional claim clearly enough so that a court can easily discern its basis." *Christopher v. Connolly*, No. 06-cv-1575, 2013 WL 1290810, at *7 (E.D.N.Y. Mar. 28, 2013). However, the state court claim must have raised "[the same] factual and . . . legal premises" as the federally asserted claim, and have been presented in a way that was "likely to alert the [state] court to the claim's federal nature." *Daye v. Att'y Gen. of State of New York,* 696 F.2d 186, 191–92 (2d Cir. 1986).

Second, after "having presented his federal constitutional claim to an appropriate state court, and having been denied relief, the petitioner must have utilized all available mechanisms to secure appellate review of the denial of that claim." *Klein,* 667 F.2d at 282. "Although a petitioner need not petition the United States Supreme Court by writ of certiorari, the state prisoner must fairly present his federal constitutional claims to the highest state court having jurisdiction over them." *O'Neal v. New York*, 465 F. Supp. 3d 206, 214–15 (E.D.N.Y. 2020). "Specifically, petitioner must have set forth in state court all of the essential factual allegations

5

asserted in his federal petition; if material factual allegations were omitted, the state court has not had a fair opportunity to rule on the claim." *Id.* at 215; *see also Daye*, 696 F.2d at 192 ("The chief purposes of the exhaustion doctrine would be frustrated if the federal habeas court were to rule on a claim whose fundamental legal basis was substantially different from that asserted in state court."). If petitioner has done so, and relief is denied, petitioner "thereupon unsuccessfully employs all the state appellate procedures available for review of such denial" and "satisf[ies] the exhaustion requirement." *Klein*, 667 F.2d at 282.

Finally, "[a] federal court may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule. This is an important corollary to the exhaustion requirement. Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address the merits of those claims in the first instance." *Davila v. Davis*, 582 U.S. 521, 527–28 (2017).

C.  *Pro Se Petitioner Consideration*

Petitioner is proceeding *pro se*. As such, his pleadings are held to "less stringent standards than formal pleadings drafted by lawyers." *O'Neal*, 465 F. Supp. 3d at 216; *see also, e.g.*, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (noting that even after *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), courts "remain obligated to construe a *pro se* complaint liberally"). "Nonetheless, a *pro se* litigant is not exempt from compliance with relevant rules of procedural and substantive law." *Gutierrez v. Capra*, No. 14-cv-6887, 2019 WL 1508454, at *7 (E.D.N.Y. Apr. 5, 2019). Petitioner's submissions are thus evaluated accordingly.

6

**DISCUSSION**

Here, Petitioner is challenging the legal sufficiency of the evidence to support his convictions and the weight of the evidence against him. Specifically, Petitioner challenges whether: (i) the prosecution sufficiently proved intent beyond a reasonable doubt, and (ii) Petitioner met his burden of proving the affirmative defense of a mental disease or defect. ECF No. 4 at 2, 4. Respondent counters that Petitioner's claims are unexhausted, procedurally barred, or lack merit. ECF No. 10-1 at 11–22. For the reasons specified in detail below, the Court finds that Petitioner's claims are neither unexhausted nor procedurally barred, but nevertheless lack merit.

### I. Petitioner's Claim of Legal Insufficiency Lacks Merit

Petitioner argues that the prosecution failed to establish his intent. ECF No. 11-11 at 200–02. According to Petitioner, witnesses at trial provided "conflicting" testimony as to whether Petitioner had a knife and intended to murder a police officer. ECF No. 13 at 5–8. Petitioner further argues that the Appellate Division made an "unreasonable determination of the facts" because a review of the evidence "would have clearly garnered a favorable decision for Petitioner." *Id.* at 8. Respondent contends that: (i) Petitioner did not challenge on appeal the sufficiency of the evidence supporting his aggravated assault and attempted aggravated assault convictions and, therefore, any claim related to those charges is unexhausted and procedurally barred, and (ii) Petitioner's claims are otherwise meritless. ECF No. 10-1 at 11–12.

> A. *Petitioner's Legal Sufficiency Claims Relating to His Aggravated Assault and Attempted Aggravated Assault Convictions Are Neither Unexhausted Nor Procedurally Barred*

Upon review of Petitioner's brief to the Appellate Division, the Court finds that Petitioner's legal sufficiency claims relating to his aggravated assault and attempted aggravated

7

assault convictions were presented to the Appellate Division and are, therefore, exhausted and not procedurally barred. Although Petitioner was largely focused on challenging his attempted aggravated murder conviction, the brief unequivocally states that Petitioner was challenging his conviction on all counts. *See* ECF No. 11 at 22 (Petitioner Brief submitted to Appellate Division dated January 28, 2020) ("This is an appeal [of Petitioner's convictions] of aggravated attempted murder of a police officer and several counts of attempted and aggravated assault on a police officer. . . ."). Moreover, in its order affirming Petitioner's conviction, the Appellate Division acknowledged that Petitioner was appealing all the counts of conviction. *Caraway*, 132 N.Y.S.3d at 840 (stating "[a]ppeal by the defendant from a judgment . . . convicting him of attempted aggravated murder of a police officer, aggravated assault of a police officer, and attempted aggravated assault of a police officer"). The Court will therefore consider the merits of Petitioner's legal sufficiency claims related to the attempted aggravated murder conviction as well as the aggravated assault and attempted aggravated assault convictions.

      Respondent's exhaustion argument raises a related question of whether the Appellate Division, given the brevity of its opinion, addressed on the merits Petitioner's challenge to his convictions for aggravated assault and attempted aggravated assault, which were squarely presented by Petitioner on appeal. Although the Appellate Division's opinion explicitly addresses only the legal sufficiency claim relating to the attempted aggravated murder conviction, there is a rebuttable presumption that the state court adjudicated the unmentioned claims on the merits. *See Johnson v. Williams*, 568 U.S. 289, 293 (2013) (holding that "federal habeas court must presume (subject to rebuttal) that [when the state court addresses some of the claims raised by a defendant but not a claim that is later raised in a federal habeas proceeding] the federal claim was adjudicated on the merits"). The Court finds that this presumption was not

rebutted, and accordingly will give deference, according to the AEDPA, to the Appellate Division's resolution of Petitioner's legal sufficiency claims related to all of his convictions.

### B. Petitioner's Legal Sufficiency Claims Lack Merit

The AEDPA "imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." *Jones v. Murphy*, 694 F.3d 225, 234 (2d Cir. 2012). "A defendant raising a sufficiency challenge . . . bears a heavy burden because a reviewing court must consider the evidence in the light most favorable to the prosecution and uphold the conviction if *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Aguilar*, 585 F.3d 652, 656 (2d Cir. 2009); *see also Gomez v. Griffin*, No. 17-cv-7249, 2021 WL 1224885, at *18 (E.D.N.Y. Mar. 31, 2021) ("When considering a claim of legally insufficient evidence, the facts are viewed in the light most favorable to the verdict."). The Court finds that Petitioner failed to satisfy this "heavy burden." *Aguilar*, 585 F.3d at 656.

"In considering a petition for writ of habeas corpus based on insufficient evidence to support a criminal conviction in the state courts, a federal court must look to state law to determine the elements of the crime." *Gomez*, 2021 WL 1224885, at *18. As mentioned above, Petitioner was convicted of attempted aggravated murder of a police officer, aggravated assault of a police officer and three counts of attempted aggravated assault of a police officer. ECF No. 11-11 at 200–02. In New York, a defendant is guilty of aggravated murder when he "with intent to cause the death of another person, he . . . causes the death of" a police officer, who "at the time of the killing [was] engaged" in the course of performing his official duties. N.Y. Penal Law § 125.26. A defendant is guilty of aggravated assault when he, "with intent to cause serious physical injury to a person whom he knows or reasonably should know to be a police officer . . .

9

engaged in the course of performing his official duties, causes such injury by means of a deadly weapon or dangerous instrument." N.Y. Penal Law § 120.11.  To be convicted of an attempt to commit a crime, the State must establish that the defendant "inten[ded] to commit a crime." N.Y. Penal Law § 110.00.

After considering the trial record in its entirety, the Court concludes that there is substantial evidence to support the jury's determination of Petitioner's intent and guilt beyond a reasonable doubt of attempted aggravated murder, aggravated assault, and attempted aggravated assault.  The prosecution presented evidence that, among other things:

> (i) Petitioner was aware that police officers were attempting to enter the basement in which he had barricaded himself. ECF No. 11-5 at 77 ("Q. And did you have any conversation with the defendant?  A. I did.  I told him it was the police. . . . I wanted to speak with him about an earlier incident.  At which time he replied, I'm not coming out, go away.");
>
> (ii) Petitioner refused to cooperate with officers and come outside, threw an item at the basement window with "force," and told officers they would have to "earn" their pay. ECF No. 11-5 at 78, 79 ("[Petitioner] threw what appeared to be a glass object at the inside of the window causing whatever that object was to shatter. . . . It was thrown with such force that you could see that the window is offset. It was . . . ajar when I started speaking to him, but when he threw the object . . . it opened fully and one side came off the hinge."); ECF No. 11-6 at 66–67 ("I started yelling into the window, [Petitioner], come to the window, come talk to me.  Come out.  And the response I got was, I'm not coming out, you are going to have to come in here and get me. You guys are going to earn your pay today.");
>
> (iii) Petitioner charged at and hit police officers while holding several knives in his hands.  In doing so, he stabbed one of the officers in the face multiple times and almost severed his nose. ECF No. 11-7 at 88–90 ("A. Subject was punching Officer Cummings in the face multiple times."); ECF No. 11-8 at 81–86 ("A. So he comes at me, comes down with the descending blow and hits me in the face.  He gets me again real quick with the second one.  I knew – at that point I knew I'd been stabbed, because I was covered in blood.  I yelled to those guys, he stabbed me.  At that point now we are in a fight.  He stabbed me.");
>
> (iv) Petitioner refused to drop the knives and fought police officers as they tried to restrain him. ECF No. 11-6 at 170–79 ("Q. Are you giving any orders to the defendant?  A. Drop the knife.  Drop the knife.  Stop, it's not worth it."); ECF No.

> 11-8 at 82–84 ("A. So now we fall down . . . With my left hand I have his right hand. And he's still got the knife in his right hand."); and
>
> (v) Two knives, one of which had blood on it, were recovered from the scene of the incident. ECF No. 11-5 at 130–131.

In light of the evidence presented, the jury's verdict is not an "unreasonable determination of the facts." 28 U.S.C. § 2254(d); *see also People v. Angarita*, 667 N.Y.S.2d 923 at 923 (N.Y. App. Div. 1998) ("The defendant's intent to cause death may be inferred from his action of plunging the knife twice into the [victim's] chest."); *People v. Patterson*, 500 N.Y.S.2d 14 at 14 (N.Y. App. Div. 1986) (finding evidence that defendant stabbed victim in head with knife was sufficient to show defendant's intent to cause serious physical injury). Any alleged inconsistencies in the police officers' testimonies were resolved by the jury based on "their observations of the witnesses and their demeanor, as well as [their] evaluation of the accuracy and reliability of their testimony when compared with the other evidence presented at the" trial as instructed by the County Court. *Walker v. Graham*, 955 F. Supp. 2d 92, 108 (E.D.N.Y. 2013); *see also* ECF No. 11-11 at 91, 94–97 (Final Jury Instructions) ("THE COURT: . . . In the last analysis, it is the function of the jury to draw their own inferences or conclusions from the evidence as you recollect the evidence and as you find such evidence credible and believable . . . . You, the jury, are the sole and exclusive judges of the facts . . . . The credibility . . . of each witness is in itself an issue of fact solely and exclusively within your province. . . . With respect to any individual witness, you may accept in whole or in part such testimony you find credible and worthy of belief and reject in whole or in part any of such testimony you find unworthy of credit or belief."). The Appellate Division specifically addressed this issue. *Caraway*, 132 N.Y.S.3d at 841 ("[W]e nevertheless accord great deference to the jury's opportunity to view the

11

witnesses, hear the testimony, and observe their demeanor. Upon reviewing the record here, we are satisfied that the verdict of guilt was not against the weight of the evidence.").

Accordingly, Petitioner has failed to demonstrate that: (i) no "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," *Aguilar*, 585 F.3d at 656, and (ii) that the jury's verdict to convict, and the Appellate Division's decision to affirm that conviction were "an unreasonable determination of the facts in light of the evidence presented" at trial. 28 U.S.C. § 2254(d). "Ultimately, federal habeas courts are not free to reassess fact specific credibility judgments by juries or to weigh conflicting testimony. On collateral review the Court must presume that the jury resolved any questions of credibility in favor of the prosecution." *Gomez*, 2021 WL 1224885, at *20.

## II. Petitioner's Claim that His Guilty Verdict Was Against the Weight of the Evidence Because of His Affirmative Defense of Mental Disease Lacks Merit

Petitioner claims that he is entitled to habeas relief because any finding that he did not meet his burden of proving the affirmative defense of mental disease, is against the weight of the evidence. ECF No. 4 at 2, 4. Respondent counters that Petitioner's argument "that the verdict was contrary to the weight of the evidence" is not a cognizable claim on federal habeas corpus review. ECF No. 10-1 at 19.

The Court agrees with Respondent that Petitioner's claim is not cognizable because it raises a claim under state law. *See McKinnon v. Superintendent, Great Meadow Corr. Facility*, 422 F. App'x 69, 75 (2d Cir. 2011) ("[T]he argument that a verdict is against the weight of the evidence states a claim under state law, which is not cognizable on habeas corpus, and as a matter of federal constitutional law a jury's verdict may only be overturned if the evidence is insufficient to permit any rational juror to find guilt beyond a reasonable doubt."); *Smith v. Lee*, No. 11-cv-530, 2014 WL 1343066, at *10 (E.D.N.Y. Mar. 31, 2014) ("It is well settled that a

12

weight of the evidence claim is distinct from a insufficiency of the evidence claim and is a state claim based on N.Y. C.P.L. § 470.15(5) that is not reviewable in a federal habeas proceeding.").

Nevertheless, because Petitioner is proceeding *pro se* and his pleadings are held to "less stringent standards than formal pleadings drafted by lawyers," *O'Neal*, 465 F. Supp. 3d at 216, the Court will consider Plaintiff's contention as a legal sufficiency claim. However, the Court gives deference to the Appellate Division's resolution of this issue because it unambiguously addressed the merits of Plaintiff's argument by stating that "he failed to meet his burden of proving the affirmative defense of mental disease or defect by a preponderance of the evidence." *Caraway*, 132 N.Y.S.3d at 841. The Court further finds that Petitioner has failed to satisfy his "heavy burden" of establishing that no "rational trier of fact" could have found Petitioner guilty in light of his affirmative defense of mental disease. *Aguilar,* 585 F.3d at 656.

Petitioner's trial counsel filed a motion to obtain the assistance of a forensic psychiatrist, specifically to assist in determining whether Petitioner was "criminally responsible" for the charged offense and to investigate a mental disease or defect defense. ECF No. 11 at 85–86. This forensic psychiatrist, Dr. Alexander Sasha Bardey, testified at trial that Petitioner was suffering from acute symptoms of schizophrenia and as a result, "had lost the capacity to understand the wrongfulness of his actions" on the day of the incident. ECF No. 11-9 at 42. In contrast, the prosecution's psychiatrist, Dr. Lawrence Siegel, testified that, although he believed Petitioner was "paranoid" at the time of the incident, he "did not lack substantial capacity to know or appreciate either the nature and consequences of his conduct, or that it was wrong due to a mental disease or defect." ECF No. 11-10 at 93–96. Dr. Siegel further testified that his opinion was based on his two-hour interview of Petitioner, his review of jail-treatment records,

13

Dr. Bardey's report, the handwritten statements of Petitioner, and phone calls Petitioner made from jail. *Id.*

In light of the evidence presented, Petitioner has failed to establish that the jury's conclusion that he failed at trial to prove an affirmative defense of mental disease or defect was a conclusion that no "rational trier of fact" could have reached. As instructed by the County Court, the jury was tasked with weighing the credibility, accuracy and reliability of the various testimony, *see supra* Section I; *see also* ECF No. 11-11 at 122–126 (Final Jury Instructions) ("THE COURT: . . . On the other hand, if you find that the People have proven beyond a reasonable doubt each of those five elements, you must consider the defendant's affirmative defense that he lacked criminal responsibility by reason of mental disease or defect. If you find that the defendant has proven that affirmative defense, then you must return a verdict of not responsible by reason of mental disease or defect . . . . Under our law, the defendant has the burden of proving an affirmative defense by a preponderance of the evidence. . . . I remind you, however, that placing this burden of the affirmative defense on the defendant does not relieve the People of the burden of proving beyond a reasonable doubt all of the elements of the crime charged."). The jury ultimately disagreed with the defense and found that Petitioner had not met his burden. ECF No. 11-11 at 200–205 (Trial Transcript). Viewing the evidence in the light most favorable to the prosecution, the evidence supporting Petitioner's guilt and the jury's conclusion that he had not met his burden of proving an affirmative defense is legally sufficient. *See Wood,* 558 U.S. at 301 ("[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance."); *Gomez*, 2021 WL 1224885, at *20 (stating that the "Court must presume that the jury resolved any questions of credibility in favor of the prosecution").

**CONCLUSION**

For the foregoing reasons, the Court dismisses the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 with prejudice.

The Court finds that Petitioner failed to make a substantial showing of the denial of a constitutional right. Therefore, a certificate of appealability ("COA") shall not issue. *See* 28 U.S.C. § 2253(c)(2). Any additional request for a COA must be addressed to the Court of Appeals. *See* Fed. R. App. P. 22(b). The Court further certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and, therefore, *in forma pauperis* status is denied for purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

The Clerk of the Court shall enter judgment accordingly and close this case.

SO ORDERED.

                                                  */s/ Hector Gonzalez*
                                                  HECTOR GONZALEZ
                                                  United States District Judge

Dated: Brooklyn, New York
        May 8, 2023